IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Antonio Saunders, )
    Plaintiff, )
     )
v. )   1:07cv501 (LMB/JFA)
     )
Buckner, et al., )
    Defendants. )

FILED AUG 28 20[..]
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Antonio Saunders, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Officers Esmiller, Simmons, and Wilkins failed to protect him from a beating by a fellow inmate, and that Officers Buckner, Budd, Bynum, Clay, and Edwards used excessive force against him, which resulted in "serious injury."[1]

By Order dated October 23, 2007, defendants were directed to file an answer or other responsive pleadings to the complaint, and on October 30, 2007, a Notice of Lawsuit and Waiver of Service of Summons was sent to each defendant. When the Waiver of Service of Summons was returned unexecuted as to defendants Bynum and Clay, the Court took steps to obtain addresses for these defendants,[2] and by Order dated December 17, 2007, Bynum and Clay were again directed to file an answer or other responsive pleading. On December 27, 2007, defendants Esmiller, Simmons, Wilkins, Buckner, Budd, and Edwards filed a Motion for Summary Judgment, a brief in support of that Motion, Notice pursuant to Local Civil Rule 7(K), and a Motion to Transfer the case to the

---

[1] Plaintiff's amended complaint also raised claims against Nurse Haythe and Officers Stith, Johnson, and Exon. By Order dated October 23, 2007, these claims and attendant defendants were dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).

[2] Ultimately, the attorney representing the other six defendants provided the Court with defendants Bynum and Clay's private addresses, which were placed under seal.

Norfolk Division. Saunders was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed two responses. Having still received no response from defendants Bynum and Clay, a summons was issued to each defendant by the United States Marshals Service in January 2008. On March 11, 2008, defendant Bynum filed a Motion for Summary Judgment, a brief in support of that Motion, Notice pursuant to Local Civil Rule 7(K), and a Response to the Motion to Transfer the case to the Norfolk Division. Saunders was again given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he filed a response on March 20, 2008. On April 11, 2008, the summons issued to defendants Bynum and Clay, which were served on March 3, 2008, were returned to the Court executed.[3] For the reasons that follow, defendants' Motions for Summary Judgment will be granted and defendants' Motion to Transfer Case to the Norfolk Division will be denied as moot.

I.

The events giving rise to plaintiff's complaint took place on December 20, 2006, February 8, 2007, and February 18, 2007, while plaintiff was a pre-trial detainee[4] at the Hampton Roads Regional Jail ("HRRJ") in Portsmouth, Virginia. Plaintiff complains that his Eighth Amendment rights to be free from excessive force and to be adequately protected by prison guards were violated.

Plaintiff claims that while he was being attacked by another inmate on December 20, 2006, defendants Simmons and Esmiller watched and did nothing to intervene or to stop the attack. Amend. Compl. 3-4. Plaintiff claims that when he realized that neither officer was going to come

---

[3] The Court notes that defendant Clay has not filed an answer or other responsive pleading in this matter.

[4] It is undisputed that plaintiff was a pre-trial detainee at the time of all three incidents. Amend. Compl. 18; Br. in Supp. of Summ. Judg. Mtn. at 3.

2

to his aid, he tried to fight back. Id. at 4. Plaintiff claims that after about five minutes of struggling with the other inmate, several other officers arrived and put an end to the incident without using force. Id. According to the affidavits and other official prison records filed by defendants, as soon as defendants Simmons and Esmiller observed plaintiff fighting with another inmate, they followed the prison's policy, which required them to immediately instruct the non-fighting inmates to go into their cells. Esmiller Aff. ¶ 4, 6; T. Simmons Aff. ¶ 4-5. Because there were forty inmates and only two officers present, prison policy dictates that the officers first secure all non-fighting prisoners in cells and wait for "appropriate backup" before they attempt to break up a fight between inmates. Esmiller Aff. ¶ 5, 10; T. Simmons Aff. ¶ 5. Once the non-fighting inmates were secured in their cells, defendants, along with ten other officers who responded to the incident, broke up the fight and restrained both inmates. Esmiller Aff. ¶ 7-8; T. Simmons Aff. ¶ 6-7. No physical injuries were observed on either inmate, although both were escorted to the medical unit. Esmiller Aff. ¶ 9,11; T. Simmons Aff. ¶ 8-9. Plaintiff agrees, and medical records document, that he was taken to the medical unit and received medical attention. Amend. Compl. 4; Medical Exhs. 1-3. Plaintiff claims that he resided in the medical unit until February 8, 2007.[5] Amend. Compl. 6.

As a result of the December 20 incident, and following an investigation,[6] plaintiff was charged with fighting another inmate and was placed in disciplinary segregation for nine days. D.

---

[5] Although plaintiff claims that there were no further incidents until February 8, 2007, defendant Buckner attests, and prison records document, that plaintiff was placed in pre-hearing detention for refusing a direct order from an officer on January 31, 2007. Buckner Aff. ¶ 9; D. Simons Exhs. 3, 3a, 3b, and 3c. Additionally, plaintiff received a disciplinary report on January 31, 2007 for refusing to obey a direct order. D. Simons Exh. 3c.

[6] The investigation revealed that plaintiff had gotten into a fight with another inmate earlier in the day and that several inmates had observed plaintiff stealing commissary items from fellow inmates. Garrett Exhs. 1, 2, and 3; T. Simmons Aff. ¶ 11; D. Simons Exhs. 1, 2.

Simons Exh. 4; Garrett Exh. 1. After the December 20, 2006 incident, plaintiff expressed fear for his safety to a number of prison officials, and his fears were documented in various special housing assignment forms, incident reports, and an informal complaint plaintiff filed on January 9, 2007. See D. Simons Exhs. 5, 5a, 5b, 5c, 6, 6a, 6b, and 6e. Prison officials spoke with plaintiff about his concerns, and on January 11, 2007, plaintiff completed two different "inmate statement form[s]" indicating that he felt safe in the jail and wanted to discharge his complaint. D. Simons Exhs. 5a, 6a, 6d, and 6f.

The second incident about which plaintiff complains occurred on February 8, 2007, when plaintiff was directed to move out of the medical unit because there was another inmate with more serious medical needs who needed to move into plaintiff's cell. Amend. Compl. at 7; Br. in Supp. of Summ. Judg. Mtn. at 4. While plaintiff was being moved in full restraints,[7] with his hands handcuffed behind his back, he claims that defendants Clay and Buckner body slammed him, which caused his chin to "bust open and leak a puddle of blood." Amend. Compl. at 7. He further alleges that defendant "Buckner kicked [plaintiff] in [his] face and put his foot on [plaintiff's] neck and side of [his] head while Officer Clay twisted [plaintiff's] wrist and arms." Id. After this alleged incident, plaintiff claims that he was taken to the medical clinic where Officer Buckner grabbed him by the shirt, pushed him against the wall, and caused his head to hit the wall numerous times. Id. at 8.

The affidavits and medical records, as well as an incident report completed immediately after the incident, include material facts omitted from plaintiff's amended complaint. According to the sworn affidavit of defendant Buckner and the incident report completed by defendant Clay, after

---

[7] It is notable that plaintiff concedes that he was in handcuffs when he was taken down to the floor by the officers. According to the officers' affidavits and incident reports, this struggle with plaintiff occurred precisely because plaintiff was in handcuffs and was refusing to allow the officers to remove them. Buckner Aff. ¶ 3-4; Clay Inc. Rpt. Feb. 8, 2007.

4

plaintiff had been moved from the medical unit to his new cell, he repeatedly refused to comply with the officers' orders to allow them to remove plaintiff's handcuffs. Buckner Aff. ¶ 3-4; Clay Inc. Rpt. Feb. 8, 2007. As a result, they had to remove the handcuffs with force. Also, the affidavit and incident report document that force was used only after plaintiff became combative, and that any injury plaintiff sustained resulted when both officers took plaintiff to the floor as they were attempting to restrain him in an effort to remove his handcuffs. Buckner Aff. ¶ 5-8; Clay Inc. Rpt. Feb. 8, 2007. Plaintiff sustained a minor laceration to his chin and was immediately taken to the medical unit for medical attention. Buckner Aff. ¶ 6-7; Clay Inc. Rpt. Feb. 8, 2007; Medical Exhs. 5, 7. After a thorough investigation of the February 8 incident, the internal affairs department concluded that "[i]n reviewing the uses of force[,] the amount of force used was reasonable and necessary under the circumstances." D. Simons Exh. 1.

The final incident about which plaintiff complains occurred on February 18, 2007. Plaintiff alleges that on this date, he was again beaten by fellow inmates. Amend. Compl. 9. Following this incident, an officer tended to "injuries" plaintiff mentions but does not describe in detail, and another officer promptly brought plaintiff to speak with defendant Wilkins so plaintiff could make a statement about the incident. Id. at 10. Wilkins told plaintiff that she would have him moved to a safe place after he received additional medical attention for his injuries. Id. However, plaintiff claims that Wilkins "abused her discretion by ordering that [he] be placed back into the same housing unit where he was attacked."[8] Id. at 11.

According to plaintiff, while being taken back to his housing unit on February 18, 2007 after

---

[8] Plaintiff was upset that he was being placed in the same housing unit because he was concerned about his safety. However, he concedes that defendant Bynum informed him that he "was gonna be safe [and that he] was gonna be in a cell by himself where nobody [could] get to [him]." Id. at 11.

receiving medical attention, defendants Bynum, Edwards, and Budd "used force to put handcuffs" on him. Id. at 11. Specifically, plaintiff claims that Bynum punched him under his right eye with the handcuffs, Budd punched him in his ribs and stomach, and Edwards "sat his 300 pounds [sic] body on the plaintiff's chest and face suffocating him ..." Id. Plaintiff claims further that "Budd continued to try to break [his] ribs with multiple punches to plaintiff's body, until Officer Bynum got handcuffs on [him]." Id. at 12.

Although plaintiff claims that he did not resist or fight back during this incident, the sworn affidavits of defendants state that any alleged force occurred only after plaintiff refused a number of direct orders from defendants. Id.; Budd Aff. ¶ 3; Edwards Aff. ¶ 2. When plaintiff refused to enter his cell and became combative, in an effort to place handcuffs on plaintiff, defendants took him to the floor where he continued to resist defendants' efforts and struggled with them "for about 2 ½ minutes." Budd Aff. ¶ 3; Edwards Aff. ¶ 2. Once defendants got plaintiff under control, it is undisputed that they escorted him back to the medical unit. Amend. Compl. 12; Budd Aff. ¶ 4; Edwards Aff. ¶ 3. According to plaintiff, the clinic nurse determined that plaintiff was not in need of medical attention[9] even though plaintiff repeatedly stated that he was in pain. Amend. Compl. 13. The nurse's conclusion is supported by the affidavits of Budd and Edwards who stated that plaintiff did not receive any medical treatment because he refused it. Budd Aff. ¶ 4; Edwards Aff. ¶ 3. Neither Budd nor Edwards observed any sign of injury to plaintiff. Budd Aff. ¶ 4; Edwards Aff.

---

[9] For all of the incidents at issue in plaintiff's amended complaint, he claims that documentation of his injuries has not "properly been placed in medical records." Amend. Compl. 20. Plaintiff's contention on this issue is belied by the numerous medical records submitted by defendants as exhibits as well as the affidavit submitted by Jacqueline Jones, a Health Services Administrator at HRRJ. See Medical Exhs. 1-9; Jones Aff. ¶ 3-9. The medical records and affidavits suggest that all of plaintiff's medical needs were well documented and that any injuries he sustained were minor. Plaintiff admits that any injuries have been fully healed. Amend. Comp. at 15, 20.

¶ 4. After being taken to the medical unit, plaintiff was returned to his cell with no further incident. Budd Aff. ¶ 5; Edwards Aff. ¶ 3. Also, as defendants promised, plaintiff was placed in a two person cell by himself for his safety. Amend. Compl. 13.

It is undisputed that a misbehavior report was filed against plaintiff following the February 18 incident for failure to follow a direct order. Id.; Budd Aff. ¶ 6; D. Simons Exh. 4. Plaintiff claims that he "beat all the charges," and his disciplinary history suggests that this particular charge for failure to obey a direct order was dismissed. Amend. Compl. 14, 19; D. Simons Exh. 4. An investigative report submitted to Colonel David Simons after a thorough investigation of the February 18 incident concluded that "[i]n reviewing the uses of force[,] the amount of force used was reasonable and necessary under the circumstances." D. Simons Exh. 1.

In response to defendants' Motions for Summary Judgment and accompanying affidavits, plaintiff has filed three responses. In his first response, filed as an affidavit on January 16, 2008, he asserts that he "stands by his amended complaint," that he "was not the aggresser [sic] in the 12/20/06 incident," and that he never refused medical treatment. Also, he expresses a variety of objections to defendants' characterization of the facts. In his January 23, 2008 "affirmation," for the most part, plaintiff merely repeats what he wrote in his amended complaint. He does, however, add that he has never been charged for stealing while incarcerated at HRRJ and asserts that defendants have "submitted false information in # 6, 7, 8, 9, 10, and 11 in there [sic] summary judgment motion."

Plaintiff's assertion that defendants provided false information is belied by the fact that much of what he identifies as "false information" consists of facts where he is in agreement with defendants. For example, plaintiff states that during the February 8 incident, "the handcuffs were

7

already on me at the time of the excessive force." The fact that the handcuffs were already on plaintiff is precisely the information presented by defendants Buckner and Clay when they describe the cause of the incident as plaintiff's refusal to allow them to remove the handcuffs. Buckner Aff. ¶ 3; Clay Inc. Rpt. Feb. 8, 2007. In plaintiff's final "affirmation" submitted on March 20, 2008, without providing an explanation that goes beyond what plaintiff stated in his amended complaint, plaintiff again makes a general, unsupported claim that defendants' affidavits are "false" and "untrue."

For the three incidents described in the amended complaint, plaintiff requests compensatory damages in the amount of $25,000,000.00, punitive damages in the amount of $100,000,000.00, and restitution in the amount of $100,000,000.00 from each named defendant. Amend. Compl. 21.

## II.

In reviewing defendants' Motions for Summary Judgment, the Court must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is properly made and supported . . . [by affidavits], an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990) (noting that when a party opposes a properly supported motion for summary

judgment, that party cannot rest on conclusory statements, but must provide specific facts showing a genuine issue, particularly when that party bears the burden of proof on an issue). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III.

Liberally construed, plaintiff claims that: (1) on December 20, 2006, defendants Simmons and Esmiller failed to protect him from another inmate; (2) on February 8, 2007, defendants Buckner and Clay used excessive force against him; and (3) on February 20, 2007, defendants Budd, Bynum, and Edwards used excessive force against him and Wilkins failed to protect him from fellow inmates. The Court will address the legal framework for each constitutional claim and then each incident in turn.

Plaintiff was a pre-trial detainee at the time of the events about which he complains. Accordingly, his claims must be analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). The due process rights of a pre-trial detainee are "at least as great as the Eighth Amendment rights of convicted prisoners." City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). "[W]hile the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual' the pre-trial detainee ... may not be subjected to any form of 'punishment.'" Martin, 849 F.2d at 870. Where a pre-trial detainee, such as plaintiff, asserts a claim of excessive force or failure to protect, the Fourth Circuit has held that such claims are governed by the deliberate indifference standard. See e.g., Riley, 115 F.3d at 1166

("The Eighth and Fourteenth Amendments thus establish ... qualified standards of protection for prisoners and pre[-]trial detainees [] against 'cruel and unusual punishment' and against 'excessive force that amounts to punishment...'"). Additionally, the Fourth Circuit does not distinguish between the Eighth and Fourteenth Amendments in the context of a pre-trial detainee's § 1983 claim. See Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Belcher v. Oliver, 898 F.2d 32, 33 (4th Cir. 1990).

### A. Failure to Protect

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Prison officials violate an inmate's Eighth Amendment right to be free from physical harm inflicted by other inmates when prison officials are deliberately indifferent to "specific known risks of such harm." Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (citing Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)). Mere negligence by prison officials, however, does not amount to a violation of an inmate's Eighth Amendment right to be protected from the attacks of fellow inmates. Ruefly v. Landon, 825 F.2d 792 (4th Cir. 1987) ("Mere negligent conduct on the part of prison officials who fail to protect a prisoner from a risk of harm posed by fellow inmates does not constitute a violation of the [E]ighth [A]mendment's prohibition against cruel and unusual punishment.").

To establish that prison officials are liable under § 1983 for failure to protect an inmate from violence at the hands of other inmates, a plaintiff must show: (1) "serious or significant physical or emotional injury," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003), and (2) that the prison officials had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (internal quotation marks omitted); see Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003). As to the first

prong, "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta, 330 F.3d at 634. As to the second, the requisite state of mind is one of "deliberate indifference" to the inmate's health or safety. Farmer, 511 U.S. at 834. A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

In this case, plaintiff has failed to establish the first of these requirements, that he suffered a significant or serious physical or emotional injury as a result of either the December 20 or February 18 altercations. Medical records document that although plaintiff sustained a small cut to his chin as a result of the December 20 altercation, he did not suffer any serious or significant physical injury resulting from that incident. Medical Exhs. 1 - 3. Additionally, plaintiff does not allege that he suffered any serious physical or emotional injuries from the December 20 incident with a fellow inmate. See Amend. Compl. 3-4.

With respect to the February 18 altercation, plaintiff claims that he was beaten by fellow inmates and sustained some "injuries." Id. at 9. He states that an officer tended to his injuries. Id. Then, plaintiff was taken to the medical unit where he complained that his head was hurting and his body was sore. Id. at 10. A female nurse wiped down plaintiff's "contusions" with a "liquid solution." Id. Plaintiff fails to describe where his body was sore or what type of "contusions" he sustained. Accordingly, plaintiff fails to allege facts sufficient to establish that he sustained any more than de minimis injuries as a result of the February 18 altercation. See Taylor v. McDuffie, 155 F.3d 479, 482 (4th Cir. 1998) (abrasions on wrists and ankles, slight swelling in the jaw area,

and tenderness over some ribs considered de minimis); Marshal v. Odom, 156 F.Supp 2d 525, 530 (D. Md. 2001) (headache, abrasion, numbness and "swelling knots all over his body" considered de minimis). Because plaintiff is unable to show that he suffered the kind of "extreme" deprivation necessary to satisfy the Eighth Amendment as a result of either of the altercations giving rise to his failure to protect claims, he cannot establish that defendant Simmons, Esmiller, or Wilkins is liable under § 1983. See De'Lonta, 330 F.3d at 634.

Moreover, even assuming plaintiff had presented evidence to show that he suffered a serious emotional or physical injury as the result of the December 20 or February 18 incident, plaintiff has failed to show that any injury resulted from deliberate indifference on the part of defendants to plaintiff's health and safety. Plaintiff presents no facts to suggest that either defendant Simmons or Esmiller had any knowledge on December 20 that an altercation was likely to occur between plaintiff and another inmate or that plaintiff was in need of protection. Additionally, the record is clear that defendants Simmons and Esmiller followed the prison's established protocol to secure the cell block and stop the altercation between plaintiff and the other inmate as soon as they recognized that an altercation had begun. Esmiller Aff. ¶ 4 - 6, 7 - 8, and 10; Simmons Aff. ¶ 4 - 7. Because plaintiff fails to establish both that he suffered a serious injury and that either Simmons or Esmiller was deliberately indifferent to his health or safety, he fails to state a claim against either of these defendants for failure to protect him from a fellow inmate on December 20.

With respect to the February 18 altercation, plaintiff fails to allege that defendant Wilkins had any knowledge that plaintiff was in danger of being harmed by fellow inmates. Instead, the basis of plaintiff's failure to protect claim appears to be plaintiff's contention the Wilkins failed to protect him when Wilkins ordered that plaintiff be placed back in the same cell block where plaintiff had

gotten into an altercation with a fellow inmate. Amend. Compl. 11. However, it is undisputed that although plaintiff was placed back in the same cell block, he was placed in a cell by himself, for his protection, and that he was placed in "protected custody." Id. at 13; Edwards Aff. ¶ 2; Budd Aff. ¶ 2-3. Also, despite plaintiff's concern for his safety after being placed in this one person cell, plaintiff fails to allege that he encountered any further problems with fellow inmates in this cell block. Accordingly, because plaintiff fails to establish either that he suffered a serious injury as a result of the February 18 altercation or that defendant Wilkins was deliberately indifferent to his health or safety, plaintiff fails to state a claim against this defendant for failure to protect him from a fellow inmate.

Because there is no genuine issue either as to whether plaintiff sustained a serious injury or whether defendants Esmiller, Simmons, and Wilkins were deliberately indifferent to a substantial risk of serious harm plaintiff faced at the hands of other inmates, summary judgment must be granted in favor of these defendants on plaintiff's claims of failure to protect.

B. Excessive Force

To establish a claim of excessive force in violation of the Constitution, a prisoner must satisfy two requirements. Stanley v. Hejirika, 134 F.3d 629, 633-35 (4th Cir. 1998). First, the prisoner must establish that the force "inflicted unnecessary and wanton pain and suffering." Id. at 634 (quoting Hudson v. McMillian, 503 U.S. 1 (1992)). Second, the prisoner must show that the officer's actions, taken in context, were "objectively harmful enough to offend contemporary standards of decency." Id. (internal citations omitted). The Fourth Circuit has expressly stated that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994); see also Taylor,

13

155 F.3d at 482 (abrasions on wrists and ankles, slight swelling in the jaw area, and tenderness over some ribs considered de minimis); Marshal, 156 F.Supp 2d at 530 (headache, abrasion, numbness and "swelling knots all over his body" considered de minimis). Furthermore, the absence of medical documentation of injuries weighs heavily against a finding of excessive force. Stanley, 134 F.3d at 637-38.

Assuming without deciding that defendants Clay and Buckner used excessive force against plaintiff when moving him from the medical unit to a new cell on February 8, and that defendants Bynum, Budd, and Edwards used excessive force when directing plaintiff to enter his cell on February 18, allegations that defendants deny[10] and which appear factually implausible,[11] plaintiff's excessive force claims still fail because he has not established that he suffered any more than a de minimus injury.

Although plaintiff alleges in the amended complaint that the forced used by defendants Buckner and Clay on February 8 was "for nothing," the incident report and affidavit document that these officers used force because plaintiff refused to allow them to remove his handcuffs, and plaintiff has not presented any evidence to create a genuine dispute over this fact.[12] Instead, the

---

[10] See infra fn. 13.

[11] Plaintiff's claims of excessive force appear factually implausible because of the numerous affidavits and exhibits from defendants averring that force was only used after plaintiff failed to comply with direct orders and became disruptive, unruly, and combative. Edwards Aff. ¶ 2 - 3, 5; Budd Aff. ¶ 2 - 3, 6 - 7; Clay Inc. Rpt. Feb. 8, 2007; Buckner Aff. ¶ 3 - 6. Additionally, plaintiff was formally charged with failing to comply with direct orders immediately after these incidents. D. Simons Exhs. 2, 4. Moreover, an Internal Affairs Investigation concluded that "at no time was any excessive use of force involved and at all times the officers involved [were] in compliance with the directives and procedures [of] the Hampton Roads Regional Jail." D. Simons Aff. ¶ 7; D. Simons Exh. 1.

[12] Plaintiff's conclusory claim that "there are material facts in disbute [sic] that are genuine for a jury to decide," a claim which appears to be made on the basis of plaintiff's blanket assertion that

14

record indicates that plaintiff was taken to the floor where he hit his chin only after he became resistant and combative. Given that plaintiff was resisting officers Buckner and Clay when they were trying to gain control over him in order to remove his handcuffs, the amount of force they used on February 8 was reasonable.

Moreover, the uncontested medical records do not reflect that plaintiff suffered anything more than a de minimus injury. The undisputed medical records establish that plaintiff's injury, which consisted only of a laceration to his chin, which required "steri stirps" but not stitches, was de minimis. See Melvin v. North Carolina Dep't of Corr., 64 F.3d 658 (4th Cir. 1995) (unpublished) (finding that the cuts and abrasions suffered by an inmate during an altercation with prison officers as they attempted to take his radio from him were merely de minimis injuries); Cox v. Gaskins, No. 501CT936H, 2003 WL 23857306, at *2 (E.D.N.C. May 30, 2003) (unpublished) (finding that two lacerations to plaintiff's head and an injury to his nose were de minimis injuries), aff'd, 78 Fed. Appx. 310 (4th Cir. Oct. 22, 2003) (unpublished). Although plaintiff complains of what he describes as a severe beating by defendants on February 8, he does not allege that he sustained any injury besides a cut on his chin. Amend. Compl. 7. Plaintiff concedes that he was taken for immediate medical attention and fails to describe any additional injuries he sustained besides the cut on his chin that was documented in the medical records.

With respect to the February 18 incident, plaintiff's own description of the force used to place handcuffs on him sounds severe. Id. at 11 - 12. However, plaintiff concedes that the force was used only "until officer Bynum got handcuffs on [him]." Id. at 12. Additionally, plaintiff fails to describe any serious injuries he sustained from the February 18 incident. Although plaintiff told the nurse

---

"the defendants and there [sic] attorneys has [sic] submitted false information," is insufficient to establish any genuine issue of material fact.

15

that he "was in pain" and described how he was "attacked" by the officers, the only injuries plaintiff mentions in his amended complaint are some cuts on his side and some bruises. Id. at 12, 13. Moreover, plaintiff concedes that any injuries he sustained had fully healed by the time he was again taken to the medical unit on March 13, 2007, when x-rays were taken, which revealed that, contrary to plaintiff's belief, he had not sustained any fracture to his cheek bone. Id. at 15; Jan. 23 Resp. at 8.

Because there is no genuine issue as to whether plaintiff sustained more than de minimis injuries as a result of the February 8 or February 18 incidents with defendants Clay, Buckner, Budd, Bynum, and Edwards, summary judgment will be granted in favor of these defendants on plaintiff's claims of excessive force.

## IV.

For the above reasons, defendants' Motions for Summary Judgment will be granted,[13] defendants' Motions to Transfer the Case will be denied as moot, and plaintiff's Motions for Default Judgment will be denied. An appropriate Order shall issue.

Entered this 28th day of August 2008.

/s/ 
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[13] Although a summons was returned executed as to defendant Clay on April 11, 2008 and an answer was due from this defendant by March 24, 2008, this defendant failed to file an answer or other responsive pleading. Because of Clay's failure to file an answer, plaintiff has filed two different Motions for Default Judgment against Clay. Plaintiff's Motions will be denied. Despite Clay's failure to file an answer to plaintiff's amended complaint, his role in the February 8, 2007 incident is adequately described and documented in the other defendants' filings and affidavits, which include an incident report completed by Clay. It is also clear from the other defendants' filings that plaintiff has failed to establish a genuine issue of material fact for trial with respect to defendant Clay. Accordingly, judgment will also be entered in favor of defendant Clay.